UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-45-1 |
| | ) | |
| HILDA TRUJILLO-ROJAS | ) | Judge Collier/Carter |

REPORT AND RECOMMENDATION

I. Introduction

Defendant's Motion to Suppress (Doc. 43) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant moves to suppress all evidence seized as a result of the warrantless search of her vehicle on March 28, 2014. For the reasons stated herein, I RECOMMEND Defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held on Defendant's motion to suppress on July 28, 2014. Special Agent Mark Delaney with the Tennessee Bureau of Investigation (TBI), along with Chattanooga Police Officer James Hixson assigned to the Drug Enforcement Agency (DEA) as a Task Force Officer (TFO), were called to testify as witnesses. I found their testimony to be credible.

Prior to March 28, 2014, law enforcement began an investigation of Defendant's drug trafficking activity with the assistance of a cooperating defendant, Ms. Lisa Gribble, who was once a significant methamphetamine distributor in southeastern Tennessee. On March 25, 2014, Ms. Gribble agreed to cooperate with law enforcement. During the course of said cooperation, she revealed Defendant as one of her sources for acquiring methamphetamine, stating that she had obtained pound quantities of methamphetamine from Defendant on three to four occasions.

1

As part of her cooperation, Ms. Gribble also identified Kevin Cash as a methamphetamine customer and distributor. She provided contact information for Cash and allowed law enforcement to contact him using a co-conspirator's phone in an effort to sell him more methamphetamine. Cash agreed to come to Chattanooga to purchase drugs. On May 26, 2014, Cash was stopped in Sequatchie County, Tennessee in a vehicle containing approximately $50,000. Cash admitted that he was going to use approximately $4,800 to purchase methamphetamine from Ms. Gribble's associate and pay the remainder to another drug distributor to whom he owed money.

Ms. Gribble also revealed another source of supply, Francisco Barajas, to law enforcement. At the direction of law enforcement, Ms. Gribble communicated with Barajas and arranged for him to bring a kilogram of "ice" methamphetamine to Chattanooga. Barajas was arrested on March 27, 2014, after he arrived at a hotel in Chattanooga, Tennessee, for an arranged meeting with Ms. Gribble. At the time of arrest, Barajas was carrying a shoe box containing approximately 1,017.9 grams of ice methamphetamine. Barajas was advised of his rights and made statements corroborating the information that Ms. Gribble had previously supplied to law enforcement officers. On the same day, a search warrant was obtained for Barajas' residence in Dalton, Georgia. Agents recovered evidence of methamphetamine distribution, including guns, cash, and a drug ledger. The drug ledger further corroborated Ms. Gribble's information. Thus, prior to the arrest of the defendant and the search of her vehicle, Ms. Gribble had established her reliability with law enforcement.

At the direction of law enforcement, Ms. Gribble contacted Defendant in a series of recorded phone calls to arrange for Defendant to bring one and a half (1.5) pounds of "ice" methamphetamine to Chattanooga. On March 28, 2014, Ms. Gribble contacted Agent Delaney to inform him that Defendant was coming from Atlanta that day to deliver the methamphetamine. Based on that information, James Hixson established surveillance around

the delivery location. Law enforcement was also notified that Ms. Gribble was not expecting any other visitors that day. Ms. Gribble later contacted DEA Agent Watters and told him Defendant, "Hilda", a short black-haired Hispanic woman, had contacted her again through a series of text messages (Gov. Exhibit 1) to let her know that Defendant was passing Walnut Avenue in Dalton, Georgia and would be in Chattanooga shortly. Officers estimated Dalton, Georgia to be thirty minutes away from Ms. Gribble's private residence. When law enforcement observed a vehicle pull into the delivery location, approximately thirty minutes later, they placed Defendant, who was the sole occupant of the vehicle, under arrest. With a search of Defendant's person, officers found a marijuana pipe. Defendant subsequently told law enforcement that her name was Hilda and she was visiting her friend to smoke. Upon searching Defendant's vehicle, law enforcement discovered three bags of ice methamphetamine weighing over two pounds (approximately 980 grams) in total, wrapped in towels in the trunk of the vehicle.

### III. Analysis

I begin my analysis by considering whether law enforcement had the necessary probable cause to search Defendant's vehicle without a warrant. Probable cause has repeatedly been defined in terms of the facts and circumstances known to the officers at the time of the search. United States v. Nigro, 727 F.2d 100, 103 (6th Cir.1984) (en banc). As noted by the Supreme Court:

> [P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief[ ] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.

Texas v. Brown, 460 U.S. 730, 742 (1983) (citations and internal quotations omitted).

Moreover, whether probable cause exists should be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). "This totality of the circumstances

3

analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir.1993) (en banc) (internal quotations omitted). Specifically,

> The analysis proceeds with various objective observations… From these data, a trained officer draws inferences and makes deductions ... that might well elude an untrained person.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

United States v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts, not readily reduced to a neat set of legal rules. Maryland v. Pringle, 540 U.S. 366, 370-71 (2003). While the substance of probable cause is a reasonable ground for belief of guilt, probable cause must be particularized with respect to the person to be searched or seized. Id. (citing Ybarra v. Illinois, 444 U.S. 85, 91 (1979)).

The Sixth Circuit Court of Appeals ("Sixth Circuit") has determined the test for the existence of probable cause is wholly objective, and the subjective belief of the arresting officer is irrelevant to determining whether probable cause exists. United States v. Anderson, 923 F.2d 450, 456-57 (6th Cir.), cert. denied, 499 U.S. 980 (1981). The Sixth Circuit also holds probable cause may be established from the collective knowledge of the police rather than solely from the officer actually making the arrest. Collins v. Nagle, 892 F.2d 489, 495 (6th Cir. 1989).

It is a long-standing rule that a law enforcement officer may make an arrest without a warrant where the officer has probable cause to believe that the individual to be arrested has committed a felony or is in the process of committing a felony. See United States v. Watson, 423 U.S. 411, 416 (1963) (citing Carroll v. United States, 267 U.S. 132, 156 (1925)); United States v. Abdi, 463 F.3d 547, 557 (6th Cir. 2006) ("[A] warrantless arrest by a law officer is reasonable…where the arrest is in public and there is probable cause to believe that a criminal

4

offense has been or is being committed."); see also 21 U.S.C. § 878(a)(3) (giving the DEA authority to make warrantless arrests so long as there is probable cause).

Likewise, law enforcement may perform a warrantless search of any part of a vehicle, including the trunk, when there is probable cause to believe that the parts of the vehicle searched may conceal the contraband which is the object of the search. See United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); Carroll, 267 U.S. at 155-56 ("The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband…therein which is being illegally transported."); United States v. Mans, 999 F.2d 966, 969 (6th Cir. 1993) ("[W]here police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any containers located within it.")

Looking at the totality of the circumstances, I conclude law enforcement had probable cause to place Defendant under arrest and search her vehicle without a warrant based on the following: (1) the communication of information between Ms. Gribble and law enforcement; (2) the reliability of Ms. Gribble as an informant, established by the two prior arrests of Frank Barajas and Kevin Cash, both within a 48 hour period; (3) the recorded phone call between Ms. Gribble and the Defendant; (4) text messages confirming the attempt to deliver of one and a half (1.5) pounds of "ice" methamphetamine to Chattanooga (Gov. Exhibit 1); (5) Defendant fitting the given description of the suspect, and, when approached by law enforcement, identifying herself as Hilda; (6) Defendant's vehicle having Georgia license plates, as expected by law enforcement; and (7) as anticipated, Defendant arriving at Ms. Gribble's private residence approximately thirty-minutes after Defendant reported she was passing by Dalton, Georgia. Cf. Draper v. United States, 358 U.S. 307, 309 (1959).

5

I conclude, based on the totality of the circumstances, there is ample evidence to establish probable cause that the individual who arrived at Ms. Gribble's private residence committed a felony or was in the process of committing a felony. Therefore, law enforcement had ample probable cause to make a warrantless arrest and to search the Defendant's vehicle.

## IV. Conclusion

For the reasons stated herein, I RECOMMEND defendant's Motion to Suppress (Doc. 43) be DENIED.[1]

S/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).